STEARNS WEAVER MILLER
WEISLLER ALHADEFF & SITTERSON P.A.
Darrell W. Payne, *pro hac vice*
Fla. Bar No. 773300
dpayne@stearnsweaver.com
150 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-2650

IRELL & MANELLA LLP
Bruce A. Wessel, SBN 116734
bwessel@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Defendant
Econocaribe Consolidators, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANGUARD LOGISTICS SERVICES (USA), INC., formerly known as NACA LOGISTICS (USA), INC.,<br><br>                Plaintiff,<br><br>        vs.<br><br>GROUPAGE SERVICES OF NEW ENGLAND, LLC; ECONOCARIBE CONSOLIDATORS, INC., d/b/a ECU WORLDWIDE & ECU WORLDWIDE (USA); and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. 2:18-cv-00517-DSF-GJS<br><br>DEFENDANT ECONOCARIBE CONSOLIDATORS, INC.'S PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT DISMISSING CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS; MEMORANDUM OF POINTS AND AUTHORITIES<br>_____ |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................... 5

III.  MEMORANDUM OF LAW .............................................................................. 8

    A. LEAVE TO AMEND REQUIRES THAT VANGUARD MAKE AN
       ADEQUATE "GOOD CAUSE" SHOWING THAT IT WAS
       DILIGENT IN SEEKING TO AMEND ITS PLEADING TO DISMISS
       THE TRADE SECRET CLAIMS; VANGUARD MUST
       DEMONSTRATE NO UNDUE PREJUDICE TO ECU ................................. 8

    B. VANGUARD DID NOT ACT DILIGENTLY IN SEEKING TO
       DISMISS ITS TRADE SECRET CLAIMS ...................................... 10

    C. BECAUSE DEFENDANTS HAVE BEEN UNDULY PREJUDICED,
       THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ................. 12

    D. VANGUARD'S TRADE SECRET CLAIMS ARE BROUGHT IN
       BAD FAITH, WITHOUT MERIT AND OBJECTIVELY SPECIOUS ......... 18

    E. THIS COURT HAS DISCRETION TO AWARD DEFENDANTS'
       FEES AS A CONDITION OF GRANTING LEAVE TO AMEND;
       ALTERNATIVELY, THE COURT SHOULD DEFER AND EXTEND
       THE TIME PERIOD FOR DEFENDANTS TO FILE A MOTION FOR
       FEES ........................................................................................ 22

IV.   CONCLUSION. ................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-1 Elecs., Inc. v. Chang*,
  342 F. App'X 293 (9th Cir. 2009)..................................................................... 19

*Addamax Corp. v. Open Software Found., Inc.*,
  149 F.R.D. 3 (D. Mass. 1993) ........................................................................... 13

*American Paper & Packaging Prods., Inc. v. Kirgan*,
  183 Cal App. 3d 1318 (Cal. Ct. App. 1986) ..................................................... 19

*Anderberg v. Masonite Corp.*,
  176 F.R.D. 682 (N.D. Ga. 1997) ....................................................................... 23

*Barnes v. D.C.*,
  42 F. Supp. 3d 111 (D.D.C. 2014) ..................................................................... 15

*Boyce v. August-Richmond County*,
  111 F.Supp. 2d 1363 (S.D. Ga. 2000)................................................................ 23

*Burnett v. Godshall*,
  828 F.Supp. 1439 (N.D. Cal. 1993) ................................................................... 17

*Catalogue Serv. of Westchester, Inc. v. Henry*,
  484 N.Y.S. 2d 615 (1985) .................................................................................. 19

*Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc.*,
  236 Cal. App. 4th 243, 186 Cal. Rptr. 3d 486 (2015)....................................... 24

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
  2016 WL 5842187 (C.D. Cal. Oct. 5, 2016) ..................................................... 17

*DuFour v. Allen*,
  2015 WL 1285310 (C.D. Cal. Mar. 19, 2015) .................................................. 17

*Etablissements Neyrpic v. Elmer C. Gardner, Inc.*,
  175 F. Supp. 355 (S.D. Tex. 1959) ............................................................. 13, 17

*Foman v. Davis*,
  371 U.S. 178 (1962) .......................................................................................... 13

ii

*Garcia v. Orion Plastics Corp.*,
    2016 WL 2904853 (C.D. Cal. May 18, 2016) ...................................................... 9

*GDS Indus., Inc. v. Great Am. Ins. Co.*,
    2016 WL 6962866 (S.D. Cal. Nov. 29, 2016) .................................................... 17

*General Signal Corp. v. MCI Telecommunications Corp.*,
    66 F.3d 1500 (9th Cir. 1995)............................................................................ 22

*Hayden v. Feldman*,
    159 F.R.D. 452 (S.D.N.Y. Jan. 18, 1995) ........................................................ 23

*In re: Orthopedic Bone Screw Prods. Liab. Litig.*,
    1998 WL 633680 (E.D. Pa. Aug. 14, 1998)................................................. 9, 16

*Int'l Ass'n of Machinists and Aerospace Workers v. Republic Airlines*,
    761 F.2d 1386 (9th Cir. 1985)........................................................................... 13

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992)....................................................................... 8, 9, 10

*Jones v. Scientific Colors, Inc.*,
    2001 WL 883689 (N.D. Ill. Aug. 6, 2001)........................................................ 16

*Lewis v. Russell*,
    2012 WL 4711959 (E.D. Cal. Oct. 3, 2012) ..................................................... 10

*Local 783, Allies Indus. Workers of Am., AFL–CIO v. Gen. Elec. Co.*,
    471 F.2d 751 (6th Cir. 1973)............................................................................ 23

*Matlink, Inc. v. Home Depot U.S.A., Inc.*,
    2008 WL 11338407 (S.D. Cal. July 10, 2008) .......................................... *passim*

*McBride v. Jenny Craig, Inc.*,
    2010 WL 11508736 (S.D. Cal. March 29, 2010)............................................... 24

*MHF Zweite Acad. Film GmbH and Co. KG v. Warner Bros.*
    *Entm't Inc.*,
    2012 WL 13012677 (C.D. Cal. Aug. 13, 2012)................................................. 10

*Pride Mobility v. Dewart Motorized Sys.*,
    2009 WL 10687317 (M.D. Pa. Nov., 13, 2009) ........................................... 9, 16

*QBE Specialty Ins. Co. v. S.H.C.C., Inc.*,
    2015 WL 12656270 (C.D. Cal. Oct. 16, 2015) ................................................. 22

*Restoration Indus. Ass'n Inc. v. ThermaPure, Inc.*,
    2014 WL 12603210 (C.D. Cal. Apr. 7, 2014) ...................................................... 9

*SASCO v. Rosendin Elec., Inc.*,
    207 Cal. App. 4th 837, 143 Cal. Rptr. 3d 828 (2012)...................................... 24

*Spina v. City of Montclair*,
    2016 WL 740261 (C.D. Cal. Dec. 6, 2016) ...................................................... 9

*Star Fabrics, Inc. v. Monroe & Main, Inc.*,
    2015 WL 12811249 (C.D. Cal. Jan. 30, 2015) .......................................... 23, 24

*The Official Creditors' Committee for QMect, Inc. v. Electrochem*
    *Funding, LLC* (*In re QMect, Inc.*),
    349 B.R. 620 (Bankr. N.D. Cal. 2006)........................................................... 16

*U.S. v. $107,702.66 in U.S. Currency Seized from Lumbee Guaranty*
    *Bank Account Number 82002495*,
    2016 WL 413093 (E.D.N.C. Feb. 2, 2016) ...................................................... 18

*U.S. v. Ito*,
    472 F. App'x 841 (9th Cir. 2012) ..................................................................... 17

*Villegas v. El Paso Independent Sch. Dist.*,
    2008 WL 11411363 (W.D. Tex. Oct. 7, 2008) ................................................ 22

*Westlands Water Dist. V. U.S.*,
    100 F.3d 94 (9th Cir. 1996)............................................................................... 17

**Statutes**

18 U.S.C. § 1836 ............................................................................................... 1, 24

35 U.S.C. § 285 ................................................................................................... 18

Cal. Civ. Code § 3426.4 .................................................................................... 1, 24

**Rules and Regulations**

19 C.R.F. § 103.31............................................................................................... 20

C.D. Cal. L.R. 54-7.............................................................................................. 25

Fed. R. Civ. P. 15 ..................................................................................... 4, 9, 13, 23

Fed. R. Civ. P. 16 ........................................................................................ 4, 8, 9

iv

Fed. R. Civ. P. 41 ............................................................................................. 9, 17

**Other Authorities**

https://panjiva.com/Dcl-C-O-Vanguard-Logistics/39968141; .............................. 20

https://www.joc.com/international-logistics/logistics-
    providers/vanguard-logistics-services-ots;.......................................................... 20

https://www.joc.com/marketingservices/subscription-options; ............................. 20

https://www.vanguardlogistics.com/ .................................................................... 20

https://www.vanguardlogistics.com/sailing?origin=USBOS&destination
    =BEANR; ......................................................................................................... 20

Journal of Commerce, including its Logistics Pricing Hub, ................................. 20

www.datamyne.com ............................................................................................ 20

www.importgenius ............................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Econocaribe Consolidators, Inc. d/b/a Ecu Worldwide ("ECU") does not oppose the dismissal of claims, but does oppose the request by the Plaintiff Vanguard Logistics Services (USA), Inc., ("VLS" or "Vanguard" f/k/a "NACA") that its trade secret claims to be dismissed without prejudice (as opposed to *with prejudice*), and that defendants be precluded from seeking prevailing party statutory fees under both California and federal law, as set forth in Vanguard's Motion for Leave to File Second Amended Complaint Dismissing Claims For Misappropriation of Trade Secrets, dated December 2, 2020 (the "Motion"). The claims should be dismissed with prejudice, and either (a) ECU should be awarded its reasonable fees or (b) the Court should reserve ruling on the issue of fees until the conclusion of the litigation.

## I. INTRODUCTION

Vanguard filed its Motion in a strategic attempt to avoid statutory liability for attorneys' fees and costs arising from its flawed trade secret claims, under 18 U.S.C. § 1836 (3)(D) and Cal. Civ. Code § 3426.4. By demanding that the claims be dismissed without prejudice, and by asking this Court to decide that the defendants are not entitled to fees, Vanguard seeks preemptive absolution for an intentional decision to file -- and to litigate for nearly three years -- objectively specious claims against one of its competitors.

Both Plaintiff Vanguard and Defendant ECU are non-vessel operating common carriers ("NVOCCs") that compete in the transportation industry. The logistics market is dynamic and highly competitive, with companies such as Vanguard and ECU competing with others (such as non-parties CaroTrans and Shipco) for customers, for relationships with truckers and ship operators, for employees, and for local partners or agencies such as Defendant Groupage Services of New England, LLC ("NEG"). Customers, routes, shipping costs and quotes are all widely-known and shared by customers and often available on public databases. ECU never took nor ever used any trade secrets from Vanguard; nor did Vanguard have any such secrets.

The non-compete and non-solicitation provisions in Vanguard's Agency Agreement with NEG (Motion, Ex. 2, Sec. 2.02) are void as contrary to California's public policy in favor of open competition. ECU and NEG never committed any wrongful acts in ultimately deciding to do business, after termination of the Vanguard agreement. NEG was always free to pursue other business opportunities and to terminate its agreement with Vanguard.

Importantly, Vanguard fails to disclose to this Court that NEG sent a notice of termination to Vanguard on December 21, 2017, *only after and precisely because* Vanguard unilaterally took away NEG's Container Freight Station ("CFS") business. Vanguard knew the CFS business had been a critical part of NEG's profitability. *See generally,* NEG's Counterclaim ("Ctrclm.") (DE 52); *see e.g.* Am. Compl. (DE 49),

2

¶¶ 17-18.  Without the CFS business, the Vanguard Agency Agreement was not viable, and Vanguard was aware that NEG considered Vanguard's action to violate the parties' agreement.  VLS-00032, attached as Ex. 1.  Vanguard notified NEG in late November that the CFS import business would be moved to Boston Freight Terminal ("BFT"), and then on December 11, 2017, unilaterally sent an e-blast to customers that *both the import and export CFS* would be moved on December 18, 2018.  *See* VLS-11665.  Vanguard had been working since August 2017 with BFT on moving all of the CFS business from NEG.  *See* VLS-11075, VLS-10725, VLS-11507.[1]  It was the December 18th CFS cut-off that that knee-capped NEG, leading to the termination notice.[2]

The question is not whether the trade secret claims can be dismissed.  ECU agrees with dismissal, but requests that the trade secret claims be dismissed *with prejudice*.  The issue before the Court is whether, after more than two years after the August 27, 2018 deadline for amendments (*see* DE 30),[3] there is a legal basis for Vanguard to avoid dismissal with prejudice and an award of fees, as an appropriate condition for granting Vanguard leave to amend.

---

[1] Discovery marked as confidential by any of the parties will be provided to the Court, upon request.

[2] In any event, any claim for a 90-day notice was waived by Vanguard when it responded to NEG's notice by immediately, on December 21, 2017, cutting off all access to its existing logistics software through Vanguard's VPN server, through which NEG conducted all of its business, thus preventing NEG from coordinating shipments, communicating with customers, or otherwise performing under the agreement for any wind-down period.  Ctrclm. (DE 52), ¶ 66-68.

[3] Or, charitably, October 26, 2018.  *See* DE 41.

3

Rule 15(a) and Rule 16(b) govern Vanguard's request for a late amendment. Vanguard is required to establish good cause for its late amendment, and it failed to make a showing of any diligence. At best, Vanguard was careless; at worst, this has all been a tactical decision to improperly pressure the defendants. Vanguard's only justification – that the trade secret claims are "not necessary" (Motion, at 2) – is not legally or factually sufficient to avoid dismissal with prejudice. Vanguard ignores the substantial time and effort expended on the trade secret claims and cannot explain how the defendants were not unduly prejudiced by having to defend the claims. Over the course of the last 2 ½ years, ECU incurred well over $300,000 in attorneys' fees in responding to discovery, propounding discovery, evaluating documents and pressing Vanguard to provide more complete responses. Thus, ECU suffered substantial prejudice. If the trade secret claims are not dismissed with prejudice, ECU will suffer further prejudice arising from uncertainty about the scope of discovery and the risk of Vanguard attempting to re-litigate or resuscitate the abandoned trade secret and confidentiality issues in this or some other litigation.

The Court should grant leave to amend and provide explicitly for dismissal with prejudice of Counts 2 and 3 of the Amended Complaint, along with all the other deleted allegations. The Court can and should award ECU its attorneys' fees and costs incurred in connection with defending the trade secret claims, in an amount to be determined. In the alternative, the Court should reserve ruling on the issue of

entitlement to fees, extend all deadlines for fee motions under the Local Rule 54-7, and allow the defendants to file their motion for fees at an appropriate time.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Licensed NVOCCs like Vanguard and ECU generally arrange for point-to-point shipment of goods for individual and business customers via ocean, land and air transit. Most shipments are multi-modal. NEG has operated for nearly three decades with well-developed relationships with customers, primarily in Boston and the New England area. It is also licensed with the Federal Maritime Commission ("FMC") as an NVOCC and as an Ocean Transportation Intermediary ("OTI"), and acts as a Container Freight Station ("CFS") to receive, trans-ship and temporarily store cargo. NEG worked as a local agency for Vanguard and then ECU.

The transportation industry is extremely competitive, with many players handling various aspects of the transportation process, and sophisticated customers like freight forwarders and large companies. Vanguard itself states that, "As is common in the industry, rate discussions and adjustments are frequently made to adapt to rapidly changing competitive conditions." *See* Am. Compl. (DE 49), ¶ 24.

The market for transportation industry employees and managers is also fluid. Employees often move from one company to another. Of course, such employees retain their relationships and general knowledge of the market when they move to another company, including information about customers, pricing, routes, etc.

Over the years, the relationship between Vanguard and NEG had become strained, with many disputes regarding commissions owed and payments due to NEG and Vanguard's demands for further discounts and other reductions in fees. *See generally*, Ctrclm. (DE 52). Without first advising NEG, Vanguard decided in August 2017 that it needed "to make a move in [Boston]" and engaged with BFT to negotiate rates and take over both NEG's import and export CFS business. *See* VLS-11075, VLS-10725, VLS-11507. Vanguard had apparently been considering taking this step for a year. *Id.* Perhaps because of mutual dissatisfaction, NEG was communicating during this same period of time with ECU about the prospect of doing business with ECU, but ECU was always careful to be sure to act in a legal manner and to not receive any confidential information.

Importantly, the Vanguard Agency Agreement contains no restrictions on NEG's ability to consider moving its business to another NVOCC, and to negotiate with potential replacements should the agreement be terminated. There is no contractual prohibition on NEG reaching out to ECU, or Shipco or CaroTrans for that matter, and negotiating with another NVOCC, whether NEG was considering terminating the agreement with Vanguard, or whether it was preparing for the day when Vanguard might terminate. Likewise, Vanguard was not barred from having preliminary or formal negotiations with a replacement CFS like BFT. *See* Am. Compl. (DE 49), Ex. 2.

The Agency Agreement also did not identify any particular categories of information as "trade secrets." *Id.* In particular, there is no identification of the particular types of reports that Vanguard has been claiming as trade secrets, as any sort of confidential information. Likewise, there is no listing of items such as customers, customer lists, customer preferences, routes, costs/margins/financial information, as any "trade secrets." *Id.* at Sec. 2.03. In addition, *none* of the documents or information that Vanguard now claims as "trade secrets" were marked in Vanguard's records as confidential or secret information (at least not prior to discovery in this litigation). *See* Vanguard's Resp. to ECU's 1st Request for Production of Documents ("RFP"), No. 12 (producing no documents which identify the Alleged Trade Secrets as confidential or secret information, other than the Agency Agreement), No. 13 (producing no documents with confidentiality marks, other than those marked pursuant to the stipulated protective order in this case); *see also* Vanguard's Resp. to ECU's 1st Request for Admissions ("RFA"), Nos. 5-6, 9-10 (admitting reports and information never internally marked as confidential). The reports that Vanguard now claims are "trade secrets" were apparently downloaded regularly by NEG as part of its normal business, and to provide data to document outstanding balances due from Vanguard to NEG. Of course, the mere fact that Vanguard does not impose any security protections to prevent downloading such reports completely undermines its specious claim that the reports are trade secrets.

ECU has provided, and has sought, substantial discovery in this case, including information that confirms that ECU never saw or gained access to the reports. ECU served a response to Vanguard's subpoena on August 28, 2018, confirming it had no such reports. ECU produced documents on September 13, 2018, and again on March 15, 2019, April 16, 2019, July 10, 2019, August 22, 2019, and September 13, 2019. By at least no later than September 2019, Vanguard was fully aware that ECU never received or used the reports claimed as "trade secrets" and was fully aware of the August 2017 fax (which contained only NEG estimates).

## III.    MEMORANDUM OF LAW

### A. LEAVE TO AMEND REQUIRES THAT VANGUARD MAKE AN ADEQUATE "GOOD CAUSE" SHOWING THAT IT WAS DILIGENT IN SEEKING TO AMEND ITS PLEADING TO DISMISS THE TRADE SECRET CLAIMS; VANGUARD MUST DEMONSTRATE NO UNDUE PREJUDICE TO ECU

In considering Vanguard's motion for leave to amend and any demonstration of "good cause," and finally, whether to dismiss with prejudice, the most relevant factors ultimately are: (1) Vanguard's lack of diligence in pursuing the amendment and (2) the substantial prejudice to Ecu. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609-610 (9th Cir. 1992) (primary consideration is diligence of party seeking amendment); *Matlink, Inc. v. Home Depot U.S.A., Inc.*, 2008 WL 11338407, at *1 (S.D. Cal. July 10, 2008) (considering movant's delay and undue prejudice to defendants, court granted leave to amend but required dismissal with prejudice).

Vanguard makes no real attempt to satisfy Rule 16(b)'s good cause standard, claiming only that dismissal will result in "narrowing the issues, reducing discovery and shortening the trial," while conceding that the trade secret claims are "not necessary." Motion, at 17-18.[4]

The scheduling order's amendment deadline passed two years ago, and thus Vanguard's ability to amend the complaint is governed by Rule 16(b), which requires that Vanguard must first show "good cause." *Johnson*, 975 F.2d at 608. Then, Vanguard must also demonstrate that amendment is proper under Rule 15(a). *Id.*; *Restoration Indus. Ass'n Inc. v. ThermaPure, Inc.*, 2014 WL 12603210, at *3 (C.D. Cal. Apr. 7, 2014). Finally, although the Court retains its discretionary authority to dismiss a claim *sua sponte* under Rule 41(b), it is still appropriate to dismiss with prejudice where there is a lack of diligence by the plaintiff and undue prejudice to the defendant. *See Spina v. City of Montclair*, 2016 WL 740261, at *1 (C.D. Cal. Dec. 6, 2016) (applying Rule 16(b) good cause standard, and dismissing § 1983 claim with prejudice, where plaintiff moved to dismiss some but not all of her claims); *Garcia v. Orion Plastics Corp.*, 2016 WL 2904853, at *3 (C.D. Cal. May

---

[4] It is clear that merely "narrowing the issues" is not a sufficient basis to avoid dismissal with prejudice, where a plaintiff seeks to amend its complaint to drop certain claims. *Matlink*, 2008 WL 11338407, at *2 (dismissing with prejudice); *Pride Mobility v. Dewart Motorized Sys.*, 2009 WL 10687317, at *2 (M.D. Pa. Nov., 13, 2009) (dismissing claims with prejudice, even where proposed amendment to remove two claims would thus be "streamlining the litigation"); *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, 1998 WL 633680, at *2 (E.D. Pa. Aug. 14, 1998) (court required amendment to effect a voluntary dismissal with prejudice even though "litigation will be significantly streamlined" if conspiracy claim is dismissed).

18, 2016) (dismissing claim with prejudice under Rule 41(b); plaintiff failed to satisfy good cause standard for amendment under Rule 16)).

## B. VANGUARD DID NOT ACT DILIGENTLY IN SEEKING TO DISMISS ITS TRADE SECRET CLAIMS

To demonstrate diligence, the moving party is required to show that its noncompliance with the scheduling order's deadline occurred because of matters which could not have been reasonably foreseen or anticipated and that it was diligent in seeking amendment. *See MHF Zweite Acad. Film GmbH and Co. KG v. Warner Bros. Entm't Inc.*, 2012 WL 13012677, at *1 (C.D. Cal. Aug. 13, 2012) (citation omitted). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. Most relevant here, "a tactical decision to delay does not merit good cause." *Lewis v. Russell*, 2012 WL 4711959, at *5 (E.D. Cal. Oct. 3, 2012) (citation omitted).

Vanguard offers no rationale for its delay and no explanation for why it never previously sought to extend the amendment deadline, despite numerous extensions of other pretrial deadlines. Vanguard could have, and should have, dismissed the claims as soon as it received documents confirming ECU never received or used any reports. Before filing its lawsuit, Vanguard assuredly must have appreciated the complexity in proving a trade secret claim. The record shows only that Vanguard was at best careless in failing to consider and fully comply with the pleading deadlines. *See Johnson*, 975 F.2d at 609 (carelessness incompatible with diligence).

At worst, and more likely, the record reflects that Vanguard's decision was a tactical strategy to delay or otherwise gain advantage to force ECU to capitulate to an unreasonable settlement, by attempting to use the possibility statutory trade secret fees as leverage. Such tactical maneuvers are not good cause. *Lewis*, 2012 WL 4711959, at *5. It is revealing that Vanguard "has concluded that [the trade secret claims] are not necessary to Plaintiff gaining the relief it ultimately seeks in this case." Motion, at 1, 2, 17-18, 20. First, Vanguard offers no facts and no sworn declaration from any Vanguard employee as to the specifics of when and why it concluded that the trade secret claims were "not necessary." This failure, alone, warrants denial of Vanguard's attempt to dismiss without prejudice. Second, if the claims are immaterial to the relief requested, they should have never been filed.

The real reason for Vanguard's Motion is that the trade secret claim is without merit, and ECU has been pursuing efforts to require Vanguard to comply with its fundamental discovery obligations on the alleged trade secrets. Vanguard concedes as much when it states that "…defendants' focus on the trade secret discovery was bogging down the case…" Motion at 12. A more accurate way of phrasing it would be that Vanguard simply could not support its alleged misappropriation claims.

In purporting to identify the alleged trade secrets, Vanguard produced only the reports previously listed and a 2-page document that ECU produced, and provided general, conclusory descriptions in its trade secret specification and interrogatory answers; Vanguard claims "no documents exist" that reflect that any information that

11

is part of the alleged trade secret reports are *not* secret or confidential. *See* Vanguard Resp. to ECU 1st RFP, No. 1. No. 32.[5]  For example, Vanguard has not even agreed to withdraw its many "boiler-plate" objections to ECU's requests and interrogatories, nor confirmed whether it is withholding information based upon those objections. Further, and even more damning, after 3 years of litigation, Vanguard cannot specifically identify even one customer allegedly poached from Vanguard through the use of allegedly confidential information. *See* Vanguard Resp. to NEG's 1st Int., No. 11 (attached as Ex. 2).  Similarly, Vanguard claims that even now it "does not presently know the independent economic value" of the alleged trade secrets.  *Id.*, No. 5 (attached as Ex. 2).  With no damages, there is no trade secret claim.

It was only *after* ECU continued to press the written discovery issues, as generally described in the September 30, 2020 Payne email (Motion, Ex. T), that Vanguard responded by indicating it would abandon its trade secret claims. *See also* 10-16-20 email from D. Payne (detailing outstanding discovery issues, including trade secret issues and other matters).

### C.  <u>BECAUSE DEFENDANTS HAVE BEEN UNDULY PREJUDICED, THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE</u>

---

[5] As reflected in the parties' email communications, ECU did not oppose remote depositions this fall, but reasonably sought to complete documentary discovery before proceeding with depositions. Prior to the Covid pandemic, by email on February 7, 2020, ECU raised detailed discovery issues with Vanguard.  The issues were discussed and Vanguard made a commitment to try to address some of the issues, as part of a February 19, 2020 "meet-and-confer".  *See e.g.*, Motion, Ex. T (9-30-20 email from D. Payne) (Vanguard never provided direct or complete response; Vanguard's March 2020 2nd Supplemental Response did not address substance of issues).

In analyzing the Motion for leave to amend, this Court has the power to require "that claims contained in the original complaint but not included in the amended complaint be considered dismissed with prejudice." *Matlink,* 2008 WL 11338407, at *1; *see Addamax Corp. v. Open Software Found., Inc.*, 149 F.R.D. 3, 5-6 (D. Mass. 1993) (same) (citing *Etablissements Neyrpic v. Elmer C. Gardner, Inc.,* 175 F. Supp. 355 (S.D. Tex. 1959)). "In determining whether to impose conditions, the factors that are relevant to determining whether to grant leave initially may be considered." *Matlink*, 2008 WL 11338407, at *1 (quoting *Int'l Ass'n of Machinists and Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1391 (9th Cir. 1985)). Of the Rule 15(a) factors, the most relevant considerations here include: undue delay, bad faith or dilatory motive on the part of the movant, and undue prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

*Matlink* is highly instructive and directly on point. There, the plaintiff sought to amend the complaint by dropping certain patent claims, but not the entire lawsuit. 2008 WL 11338407, at *1. The defendants did not oppose the amendment, but, much like ECU in the instant case, requested that the claims be dismissed with prejudice or that the plaintiffs pay the defendants' fees and costs. *Id.* The court granted the motion to amend on the condition that the claims be dismissed with prejudice, given undue delay by the plaintiff and undue prejudice to the defendants if the plaintiffs could merely dismiss without prejudice. *Id.* at 2.

13

The defendants had incurred "not insubstantial" fees and costs in defending the claims and because the case had been pending for over six months, the court concluded the defendants "will suffer prejudice if Plaintiffs were allowed to simply dismiss certain of their claims at this point in the litigation." *Id.* at 2. The Court rejected the argument that some of the defendants' work might have some value. "Usefulness, however, is not the touchstone for determining prejudice." *Id.* Even if useful in some way, "the effort and expense incurred by Defendants…also will have been unnecessary if the claims are now dismissed from this case." *Id.* The court pointed out that the plaintiffs' counsel should have fully analyzed the factual and legal bases for their claims, *before* filing the amended complaint, and that plaintiff (just like Vanguard) did not point to any specific subsequent event as the reason for the motion. In concluding that plaintiffs engaged in undue delay, the court also rejected the argument the same argument relied upon by Vanguard, that it was enough that the amendment would "simplify[] and narrow[]" the issues. *Id.*

Vanguard delayed for more than two years after filing its claim and ECU has incurred very substantial time and effort, and attorneys in evaluating the trade secret claims, in crafting and pursuing discovery, in reviewing internal records and Vanguard's production, and in otherwise defending the trade secret claims. The fact that there have been no depositions and no summary judgment is irrelevant. The reason there have been no depositions is precisely because the defendants have had to expend such substantial time on attempting to obtain full and complete discovery

14

from Vanguard, *before* proceeding with depositions and dispositive motions. *See* Motion, Ex. T (9-30-20 Payne email). Vanguard's own recalcitrance cannot be a basis for a decision to dismiss without prejudice. Further, Vanguard makes no real claim of any prejudice it would suffer if the claims are dismissed with prejudice, and nor can it. In fact, Vanguard was willing to stipulate to a dismissal of the trade secret claims with prejudice. DE 88, Eskigian dec., ¶ 41. Because its claims are "not necessary", there is no reason not to finally dispose of them. ECU, in contrast, has suffered undue prejudice, and therefore the dismissal should be with prejudice.

This Court should also take into account "concerns over preservation of judicial and parties' resources and fairness to the defendant…" *Barnes v. D.C.*, 42 F. Supp. 3d 111, 120 (D.D.C. 2014) (dismissing federal claims with prejudice, where plaintiff made the "tactical choice" to seek amendment to improve consideration of a related motion for remand). If the claims are not dismissed with prejudice, ECU will face the risk and uncertainty associated with possible future related claims from Vanguard, whether in this case or some other. All of the previous litigation effort will have been wasted, and ECU will be forced again re-litigate the same issues, creating substantial inefficiency and waste. A defendant should not be left "to the plaintiff's caprice in re-asserting, as some later date, [claims] that the defendant has been prepared to litigate now in this forum." *Barnes*, 42 F. Supp. 3d at 120. Dismissal with prejudice is warranted where, as here, there could be a "repetitious waste of resources and time on the part of the parties and…courts." *Id.* Only a

15

dismissal with prejudice will confirm that these confidentiality issues are fully and finally removed from this litigation, so that the parties – and the Court – can focus on the actual issues and facts that remain relevant to the lawsuit.

Dismissal with prejudice is a reasonable and fair result, if Vanguard truly is seeking to abandon its claims and narrow the issues in the lawsuit. Numerous federal courts have come to the same conclusion. *See, e.g., The Official Creditors' Committee for QMect, Inc. v. Electrochem Funding, LLC* (*In re QMect, Inc.*), 349 B.R. 620, 623, 626 (Bankr. N.D. Cal. 2006) (court may impose reasonable conditions, including elimination of claims with prejudice in amended complaint); *Pride Mobility v. Dewart Motorized Sys.*, 2009 WL 10687317, at *2 (M.D. Pa. Nov., 13, 2009) (dismissing dropped claims with prejudice because "prejudice could befall [defendant] were it forced to litigate the indemnity claims at some point *in futuro* after receiving the repose occasioned by granting" the motion for leave); *Jones v. Scientific Colors, Inc.*, 2001 WL 883689, at *2 (N.D. Ill. Aug. 6, 2001) (proposed amendment only granted on condition that withdrawal of constructive discharge theory be deemed equivalent to voluntary dismissal with prejudice; plaintiffs offered "no explanation whatsoever for the timing of their motion" and provided no "mitigating explanation"; there was much discovery; defendant incurred expense for 16 months); *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, 1998 WL 633680, at *2 (E.D. Pa. Aug. 14, 1998) (granting plaintiff leave to amend complaint to omit conspiracy claims and "requir[ing] that the amendment effect[ ] a voluntary

dismissal with prejudice"); *Etablissements Neyrpic*, 175 F. Supp. at 358 (permitting amendment and requiring dismissal with prejudice of withdrawn claims).[6]

Further, courts recognize that a party can suffer "legal prejudice" sufficient to support an order of dismissal with prejudice under Rule 41, if a dismissal without prejudice might preclude a finding of prevailing party status. *See U.S. v. Ito*, 472 F. App'x 841, 841 (9th Cir. 2012) (reversing dismissal without prejudice and remanding with instructions to dismiss with prejudice); *DuFour v. Allen*, 2015 WL 1285310, at * (C.D. Cal. Mar. 19, 2015) ("legal prejudice is 'prejudice to some legal interest, some legal claim, [or] some legal argument;' focus is on 'the rights and defenses available to a defendant in future litigation"; "[a] defendant may also suffer plain legal prejudice if dismissal without prejudice prevents it from bringing a motion for attorneys' fees as a prevailing party, because 'dismissal without prejudice precludes prevailing party status'") (citation omitted); *GDS Indus., Inc. v. Great Am. Ins. Co.*, 2016 WL 6962866, at *1 (S.D. Cal. Nov. 29, 2016) (plain legal prejudice if dismissal without prejudice prevents motion for attorneys' fees as prevailing party) (citation omitted); *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2016 WL 5842187, at *1-2 (C.D. Cal. Oct. 5, 2016) (dismissing claim *with prejudice* because

---

[6] Vanguard's cases (*Burnett v. Godshall*, 828 F.Supp. 1439 (N.D. Cal. 1993), and *Westlands Water Dist. V. U.S.*, 100 F.3d 94 (9th Cir. 1996)) actually support ECU's position. The claims in *Burnett* were dismissed with prejudice because, in part, the RICO claims were added without diligent research. 828 F.Supp. at 1444. Vanguard's counsel has presented no evidence of any diligent research in advance of filing its trade secret claims. The *Burnett* court also imposed fees. *Id.* The *Westland Water* court specifically noted that "[t]he defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorneys fees. 100 F.3d at 97. This result would not be inconsistent with ECU's position.

defendant would suffer plain legal prejudice if dismissal is without prejudice and therefore no prevailing party attorneys' fee motion under 35 U.S.C. § 285"); *U.S. v. $107,702.66 in U.S. Currency Seized from Lumbee Guaranty Bank Account Number 82002495*, 2016 WL 413093, at *4 (E.D.N.C. Feb. 2, 2016) (dismissing with prejudice because otherwise prevailing party status under civil forfeiture statute may be foreclosed).

As set forth below, as prevailing parties, the defendants have a statutory right to fees. A dismissal with prejudice is consistent with supporting the purpose of such prevailing party fee statutes and would preserve Vanguard's statutory remedies.

Finally, Vanguard's claimed belief in the continuing validity of its unnecessary trade secret claims is another compelling reason the dismissal must be with prejudice. By making such an argument, Vanguard is suggesting that it may threaten to reassert these claims again, whether in this court or some other jurisdiction. Vanguard cannot have it both ways: after 2 ½ years of litigation over trade secret and confidentiality issues, the claims must be put to rest once and for all.

## D.  **VANGUARD'S TRADE SECRET CLAIMS ARE BROUGHT IN BAD FAITH, WITHOUT MERIT AND OBJECTIVELY SPECIOUS**

It is not necessary for this Court to make a final determination as to the lack of merit of Vanguard's trade secret claims. That issue can be decided as part of a future motion for statutory fees. But, it is clear that the trade secret claims are hollow.

For example, Vanguard claims that "customer preferences" are Vanguard's trade secrets.  Motion at 8.  The concept is absurd in that customers are absolutely free to tell the world what their preferences are.  And when customers told NEG what their needs were, NEG was free to use that information after it left Vanguard.  "Remembered information as to specific needs and business habits of particular customers is not confidential."  *Catalogue Serv. of Westchester, Inc. v. Henry*, 484 N.Y.S. 2d 615, 616 (1985) (reversing injunction).

Vanguard also asserts, without explanation or supporting documentation, that customers and shipping routes are somehow confidential and a secret owned by Vanguard.  But, most if not all of this information is published or easily available on databases in part because of the broad disclosure requirements in the transportation industry.  Information that is readily ascertainable through such public sources or otherwise readily available to or ascertained by competitors in the industry, simple does not constitute a trade secret.  *See e.g. A-1 Elecs., Inc. v. Chang*, 342 F. App'X 293, 295 (9th Cir. 2009); *American Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal App. 3d 1318, 1326 (Cal. Ct. App. 1986) (customer lists not trade secrets; compilation process was not sophisticated nor difficult nor time-consuming; industry was competitive; manufacturers often dealt with more than one company at a time). *See* ECU's Ans. and Aff. Def. to Am. Compl., Defense Nos. 13, 15 (DE 61).

Freight forwarders and OTIs are licensed with the FMC, and their names, addresses, etc. are easily available online, from regulatory sources, and through

commercial services, including the FMC's OTI list, the FMC's Ocean Freight Forwarder list, the FMC's NVOCC list, the FMC's Non-Vessel Operating Common Carrier tariff list, the FMC's website, Panjiva (a part of S&P Global Market Intelligence) (www.panjiva.com), the Journal of Commerce, including its Logistics Pricing Hub, www.datamyne.com, www.importgenius, etc.    Customs discloses shipping routes to the public.    Specifically, 19 C.R.F. § 103.31 (a) provides that "vessel manifests and summary statistical reports of imports and exports" are public including "the name and address of the shipper, general character of the cargo, . . . port of exit, port of destination, and country of destination."  Shipping lines, OTI's and forwarders themselves all publish sailing schedules and "routes" as a marketing method to show clients the extent of their services.

In fact, it is easy to find substantial information about Vanguard, its routes, its rates and charges simply by looking at any number of websites or subscribing to a market service or perusing Vanguard's own website.  *See,* for example:

https://panjiva.com/Dcl-C-O-Vanguard-Logistics/39968141;

https://www.joc.com/international-logistics/logistics-providers/vanguard-logistics-services-ots;

https://www.joc.com/marketingservices/subscription-options;

https://www.vanguardlogistics.com/sailing?origin=USBOS&destination=BEANR; and

https://www.vanguardlogistics.com/ (Vanguard website identifying shipping routes).

20

Commercial services offer up-to-date databases more valuable than anything Vanguard might have. By cross-referencing available information like carrier codes, vessel country codes, shipper/cosignee names and addresses, descriptions of goods, etc., one can discern customers, routes, and the nature and amounts of the goods being transported to and from Boston and the New England area. None of this information can constitute a trade secret, and Vanguard has not and cannot explain how the reports at issue are somehow some unique data compilation. Data on clients as well as shipping routes are all readily available.

Finally, it is worth noting that Vanguard filed a separate trade secret lawsuit in this very Court, against a different party, in dealings wholly unrelated to the NEG Agency Agreement. *See Vanguard Logistics Services (USA), Inc., v. Fraser Robinson, et al.,* Case No. 2:20-cv-09880 (C.D. Cal.). Despite Vanguard's allegations in the instant case that it knew as of January 2018 that NEG downloaded supposedly confidential reports in December 2017, Vanguard apparently did not employ security protocols to prevent downloading and copying of supposedly confidential information. The defendant in the *Robinson* case is alleged to have been able "to gain access to and copy secret, proprietary information" more than 10 months later, in October 2018. *Id.*, at ¶ 13. It is clear that Vanguard did not really believe this information was truly confidential. If it had, it surely would have taken additional steps to protect its systems and information, after purportedly realizing its systems could be easily compromised, as of December 2017.

### E. **THIS COURT HAS DISCRETION TO AWARD DEFENDANTS' FEES AS A CONDITION OF GRANTING LEAVE TO AMEND; ALTERNATIVELY, THE COURT SHOULD DEFER AND EXTEND THE TIME PERIOD FOR DEFENDANTS TO FILE A MOTION FOR FEES**

A trial court can exercise its discretion to award fees as a condition for amendment to compensate the opposing party for additional costs where the original pleading was faulty. *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995) (awarding fees where party prejudiced by filing and subsequent dismissal of meritless claims). Courts normally impose fees where there is bad faith, substantial prejudice, or futility. *See QBE Specialty Ins. Co. v. S.H.C.C., Inc.*, 2015 WL 12656270, at *3 (C.D. Cal. Oct. 16, 2015) (amendment conditioned on the payments of fees requires a defendant to establish bad faith, substantial prejudice, or futility).

In fact, where a plaintiff itself raises and drops certain claims, and then argues that the claims are "unnecessary to their case," just as Vanguard argues, a court may condition leave to amend on dismissal of the dropped claim with prejudice, and reimbursement of fees. *Villegas v. El Paso Independent Sch. Dist.*, 2008 WL 11411363, at *4 (W.D. Tex. Oct. 7, 2008). "It is unreasonable to expect Defendant to pay to defend against claims" that are admittedly unnecessary. *Id.*

On the current record, where Vanguard has not bothered to offer any substantial good faith basis for its claims, and where the defendants have suffered significant prejudice by having to expend over $300,000 to litigate Vanguard's

claims, the court has the discretion to award fees. *See also Local 783, Allies Indus. Workers of Am., AFL–CIO v. Gen. Elec. Co.*, 471 F.2d 751, 756 (6th Cir. 1973) ("reasonable conditions" attached to Rule 15 amendments include requiring a party to bear a portion of additional costs); *Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 687 (N.D. Ga. 1997) (awarding defendant discovery fees and costs to compensate defendant and avoid any prejudice caused by amendment, pursuant to Rule 15(a)); *Hayden v. Feldman*, 159 F.R.D. 452, 454 (S.D.N.Y. Jan. 18, 1995) (granting attorneys' fees for expenses incurred in defending against amendments to pleadings that moving party seeks to drop); *Boyce v. August-Richmond County*, 111 F.Supp. 2d 1363, 1367 (S.D. Ga. 2000) (to alleviate prejudice to defendant, court conditioned leave to amend and dismissal of some claims on payment of fees relating to dismissed claims).

The two cases relied upon by Vanguard regarding whether a dismissal can be conditioned on payment of fees are not helpful to Vanguard's case. *Star Fabrics, Inc. v. Monroe & Main, Inc.*, 2015 WL 12811249 (C.D. Cal. Jan. 30, 2015), dealt with a delay of only 12 days and the court concluded this time period was not unreasonable. *Id.* at *2-3. That slight delay is a dramatic contrast to Vanguard's lack of diligence in failing to move to dismiss for nearly two years. In fact, Vanguard never bothers to offer any critical date that should have triggered its determination to dismiss the trade secret claims. Importantly, the *Star Fabrics* court did dismiss the case *with prejudice*. *Id.* at *3.

Vanguard mischaracterizes the issues in *McBride v. Jenny Craig, Inc.*, 2010 WL 11508736 (S.D. Cal. March 29, 2010).  Most importantly, that case did not concern nor discuss the conditioning of dismissal on an award of fees, and there is no evidence in that case that the defendant requested fees as a condition of dismissal.  It is also factually inapt.  Plaintiff, once confirming through discovery that certain evidence showed the claims should probably be dismissed, sought to dismiss the claims "that same day." *Id.* at 5.  Discovery occurred over a limited four-month time period, *id.* at *3, and not 3 ½ years, as in the instant case.  The Court seemed supportive of the plaintiffs' strategic choice to dismiss federal claims so that the case could be remanded back to state court to consider novel state law issues.  *Id.* at *5.

However, another alternative remedy would be for the Court to reserve ruling on the issue of fees, and allow the defendants to file a motion for fees at a later time. ECU has a statutory right to recover its reasonable attorney's fees and costs as prevailing party where Vanguard's trade secret claims are made in bad faith.  18 U.S.C. § 1836; Cal. Civ. Code § 3426.4. *See also SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 143 Cal. Rptr. 3d 828 (2012), as modified on denial of reh'g (Aug. 7, 2012) (awarding fees where misappropriation of trade secrets claim was objectively specious based on a complete lack of evidence); *Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc*, 236 Cal. App. 4th 243, 247, 186 Cal. Rptr. 3d 486, 490 (2015) (affirming award of fees where finding of bad faith was "amply supported by evidence that defendants did no more, and Cypress accused them of no

more, than attempting to recruit the employees of a competitor, which Maxim was entitled to do under the laws of this state"; defendant prevailed, even though plaintiff filed a voluntary dismissal without prejudice, when plaintiff "dismissed the suit to avoid an adverse determination on the merits").

It is not proper to make a final determination that ECU is not entitled to fees, at this time, but the court can toll the local rule filing deadlines and allow the defendants to file a motion for fees at an appropriate time.

## IV.    **CONCLUSION**

Vanguard cannot avoid the consequences of its litigation strategy to assert objectively specious claims by now demanding that this Court allow Vanguard to suffer no potential consequences for its improper actions.  The trade secret claims, including factual allegations and confidentiality issues related to those claims, should be dismissed with prejudice.

Further, the Court should either award ECU its fees and costs incurred in defending the trade secret claims, or defer on the issue of fees, granting an extension until the conclusion of the case of Local Rule 54-7 deadlines for ECU to file a motion for fees.

Dated: December 14, 2020          IRELL & MANELLA LLP
                                  Bruce A. Wessel

                                  By: /s/ Bruce A. Wessel
                                      Bruce A. Wessel

                                      Attorneys for Defendant
                                      EconoCaribe Consolidators, Inc.

STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON,
P.A.

By: /s/ Darrell Payne
    Darrell Payne

    *Pro Hac Vice* Counsel for
    Defendant EconoCaribe Consolidators,
    Inc.

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276.

On December 14, 2020, I served the foregoing document described as **DEFENDANT ECONOCARIBE CONSOLIDATORS, INC.'S PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT DISMISSING CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS; MEMORANDUM OF POINTS AND AUTHORITIES** on each interested party, by email, as follows:

| | | |
|---|---|---|
| David S Porter, Esq.<br>Law Offices of David S. Porter<br>17011 Beach Blvd.,<br>Suite 900,<br>Huntington Beach, CA 92647 | Telephone: (714) 444-5992<br>Fax: (714) 960-9229<br>Email:<br>dporter@dporterlaw.com | Attorneys for Plaintiff, Vanguard Logistics Services (USA), Inc. |
| Merak Eskigian<br>Mark Goshgarian<br>Goshgarian and Associates PLC<br>23901 Calabasas Road, Suite 2073<br>Calabasas, CA 91302-1542 | Telephone: (818) 519-9000<br>Fax:  (818) 591-0810<br>Email:<br>meskigian@gmlawplc.net<br>Email:<br>mgoshgarian@gmlawplc.net | Attorneys for Plaintiff, Vanguard Logistics Services (USA), Inc. |
| Adam P. Zaffos, Esq.<br>Fernald Law Group APC<br>510 West 6th Street, Suite 700<br>Los Angeles, CA 90014 | Telephone: (323) 410-0327<br>Facsimile: (323) 410-0330<br>Email:<br>adam@fernaldlawgroup.com | Attorneys for Groupage Services of New England, LLC a Massachusetts limited liability company |

☒     (BY ELECTRONIC MAIL)  I caused the foregoing document to be served electronically by electronically mailing a true and correct copy through Irell & Manella LLP's electronic mail system to the e-mail address(es), as stated on the attached service list, and the transmission was reported as complete and no error was reported.

Executed on December 14, 2020, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


| Shawana Isaac | /s/ Shawana Isaac |
| (Type or print name) | (Signature) |

## MAILING LIST

| | | |
|---|---|---|
| David S Porter, Esq.<br>Law Offices of David S. Porter<br>17011 Beach Blvd.,<br>Suite 900,<br>Huntington Beach, CA 92647<br>(by e-mail only) | Telephone: (714) 444-5992<br>Fax: (714) 960-9229<br>Email:<br>dporter@dporterlaw.com | Attorneys for Plaintiff, Vanguard Logistics Services (USA), Inc. |
| Adam P. Zaffos, Esq.<br>Fernald Law Group APC<br>510 West 6th Street, Suite 700<br>Los Angeles, CA 90014 | Telephone: (323) 410-0327<br>Facsimile: (323) 410-0330<br>Email:<br>adam@fernaldlawgroup.com | Attorneys for Groupage Services of New England, LLC a Massachusetts limited liability company |
| Darrell Payne, Esq.<br>Stearns Weaver Miller<br>Weissler Alhadeff &<br>Sitterson, P.A.<br>150 W. Flagler Street<br>Suite 2200<br>Miami, FL 33130 | Telephone: (305) 789-3200<br>Fax: 305-789-2650<br>Email:<br>dpayne@stearnsweaver.com | Attorneys for Econocaribe Consolidators, Inc. |
| Bruce Wessel, Esq.<br>Irell & Manella LLP<br>1800 Avenue of the Stars<br>Suite 900<br>Los Angeles, CA 90067 | Telephone: (310) 203-7045<br>Email: BWessel@irell.com | Attorneys for Econocaribe Consolidators, Inc. |