STEARNS WEAVER MILLER
WEISLER ALHADEFF &
SITTERSON P.A.
Darrell W. Payne, *pro hac vice*
Fla. Bar No. 773300
dpayne@stearnsweaver.com
Veronica L. de Zayas, *pro hac vice*
Florida Bar No. 91284
vdezayas@stearnsweaver.com
150 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-2650

IRELL & MANELLA LLP
Bruce A. Wessel, SBN 116734
bwessel@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199

Attorneys for Defendant
Econocaribe Consolidators, Inc.

FERNALD LAW GROUP APC
Brandon C. Fernald (Bar No. 222429)
Adam P. Zaffos (Bar No. 217669)
Sasha N. Brower (Bar No. 221198)
15910 Ventura Blvd., Suite 1702
Encino, California 91436
Telephone:        (323) 410-0320
Facsimile:        (323) 410-0330
brandon.fernald@fernaldlawgroup.com
adam@fernaldlawgroup.com
sasha@fernaldlawgroup.com

Attorneys for Defendant and
Counterclaimant
Groupage Services of New England,
LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANGUARD LOGISTICS SERVICES (USA), INC., formerly known as NACA LOGISTICS (USA), INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>GROUPAGE SERVICES OF NEW ENGLAND, LLC; ECONOCARIBE CONSOLIDATORS, INC., d/b/a ECU WORLDWIDE & ECU WORLDWIDE (USA); and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:18-cv-00517-DSF<br><br>DEFENDANTS' EVIDENTIARY OBJECTIONS TO PLAINTIFF'S SUPPLEMENTAL EVIDENCE<br><br>Date:  Monday, January 10, 2022<br>Time:  1:30 p.m.<br>Judge:  Hon. Dale S. Fischer<br>Ctrm:  7D<br><br>*[Filed concurrently with Defendants' Reply Briefs]* |

**INTRODUCTION**

Defendants Groupage Services of New England, LLC ("NEG") and Econocaribe Consolidators, Inc. ("ECU") (collectively, "Defendants") hereby submit these evidentiary objections to the evidence used by Plaintiff Vanguard Logistics Services (USA), Inc. ("Vanguard" or "VLS") to support its responses to Defendants' Uncontroverted Facts or its "Additional Material Facts" in its Statement of Genuine Issues, Dkt. 133-2.

Defendants' objections, organized to track the paragraph numbers of Plaintiff's Additional Material Facts, where applicable, are set forth below. Where Plaintiff offers inadmissible evidence that does not track to a specific Additional Material Fact, Defendants address that purported evidence at the end of this brief. As further set out below, Defendants object to portions of the declarations of Sanchoyerto, Brennan, Donahue, and Hassapis. Dkts. 132-41, 133-41 ("Sanchoyerto Decl."); Dkts. 132-3, 133-3 ("Brennan Decl."); Dkts. 132-4, 133-4 ("Donahue Decl."); Dkts. 132-28, 133-28 ("Hassapis Opp. Decl.").

**PLAINTIFF'S ADDITIONAL MATERIAL FACT NOS. 65–69, 97:**

VLS relies on Paragraph 10 of the Sanchoyerto Declaration and Paragraph 6 of the Donahue Declaration to argue that NEG's December 21, 2017 letter to VLS ("NEG's Notice Letter") stated that the Agency Agreement was "immediately terminated," but those words do not appear in the letter. Sanchoyerto Decl. ¶ 10; Dkt. 133-42 (NEG's Notice Letter). NEG's Notice Letter is the best evidence of its contents. F.R.E. 1002.

**PLAINTIFF'S RESPONSES TO DEFENDANTS' UNDISPUTED FACT NOS. 14, 25 AND PLAINTIFF'S ADDITIONAL MATERIAL FACT NOS. 71, 75, 102, 104, 150:**

VLS offers the Declaration of its expert, Dr. Barbara C. Luna, and her report, to attempt to create additional factual issues at summary judgment. Such expert testimony, when used to controvert facts solely for the issue of avoiding summary

judgment, may be excluded under the sham affidavit rule. *In re Fosamax Prods. Liability Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) ("Although we have typically applied the sham issue of fact doctrine where a party submits an affidavit that contradicts the party's own prior statements, it may also apply when a party attempts to use evidence from an expert witness to defeat summary judgment."). Here, Dr. Luna attempts to offer opinions that VLS lost business and profits without personal knowledge, not based on any admissible evidence filed by VLS, and solely to contradict to Defendants' Uncontroverted Facts. *Id.*; F.R.E. 602.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' UNDISPUTED FACT NO. 45 AND PLAINTIFF'S ADDITIONAL MATERIAL FACT NOS. 76, 89, 100, 103, 119, 139, 153, 154, 155, 156:

VLS offers the Declaration of its expert, Greg Howard, and his report, to attempt to create additional factual issues at summary judgment. Such expert testimony, when used to controvert facts solely for the issue of avoiding summary judgment, may be excluded under the sham affidavit rule. *In re Fosamax Prods. Liability Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) ("Although we have typically applied the sham issue of fact doctrine where a party submits an affidavit that contradicts the party's own prior statements, it may also apply when a party attempts to use evidence from an expert witness to defeat summary judgment."). Here, Mr. Howard attempts to offer opinions that VLS lost business and profits, and lost opportunity without personal knowledge, not based on any admissible evidence filed by VLS, and solely to contradict to Defendants' Uncontroverted Facts. *Id.*; F.R.E. 602. Mr. Howard also purports to interpret the meaning of the Agency Agreement, as it relates to CFS services, without addressing numerous sections referencing specific responsibilities and fees/charges relating to CFS services, including Secs. 4.01, 4.01(a), 4.01(b), 4.01(d), 6.01, 6.02, 7.01, 7.05. The Agency Agreement is the best evidence of its contents. F.R.E. 1002.

**PLAINTIFF'S ADDITIONAL MATERIAL FACT NO. 83:**

Vanguard relies on Paragraph 10 of the Sanchoyerto Declaration, Paragraph 6 of the Donahue Declaration, and Paragraph 9 of the Hassapis Opposition Declaration to argue that "NEG was then already up and running on ECU's network" on December 21, 2017. Each of these declarants lacks personal knowledge as to whether NEG was "up and running" on ECU's network on that date, and the statements lack foundation. F.R.E. 602. The lack of personal knowledge and foundation is evidenced by Paragraph 5 of the Hassapis Opposition Declaration: "VLS is aware that ECU provided e-mail addresses to NEG before December 21, 2017, but is unaware of what other computer systems or software ECU installed for NEG at that time or its operational status." Hassapis Opp. Decl. ¶ 5.

Mr. Sanchoyerto, a VLS employee, provides no basis to support knowledge as to whether "NEG was already up and running on ECU's network." Sanchoyerto Decl. ¶ 10; F.R.E. 602. In fact, Mr. Hassapis states that "ECU's computer system had no relation to VLS's computer system" and that they were "mutually exclusive," Hassapis Opp. Decl. ¶ 9, which shows that VLS employees did not have personal knowledge about NEG's use of ECU's network.

Likewise, Mr. Donahue, also a VLS employee, provides no basis to support knowledge as to whether "NEG was already up and running on ECU's network." Donahue Decl. ¶ 6; F.R.E. 602.

Mr. Hassapis, whose only purported basis for personal knowledge is that he began working for VLS in 2019, can have no personal knowledge as to NEG's use of ECU's network on December 21, 2017, including his statement that "ECU necessarily set up computer access for NEG to its system to allow NEG to transition immediately to serving as ECU's agent." Hassapis Opp. Decl. ¶ 9; F.R.E. 602.

1    Significantly, Vanguard does not offer any testimony from anyone at NEG or

2  ECU, or any third party customer testimony, on this topic nor does Vanguard offer

3  forensic testimony about the operation of the ECU network and NEG access to it.

4  **PLAINTIFF'S RESPONSE TO DEFENDANTS' UNDISPUTED FACT NO. 21**

5  **AND PLAINTIFF'S ADDITIONAL MATERIAL FACT NO. 109:**

6    VLS relies on Paragraph 15 of the Hassapis Opposition Declaration and Exhibit

7  4 thereto to argue that "VLS recently has been able to identify 1301 lost customers

8  for the period 2018-2020." Mr. Hassapis provides no personal knowledge to properly

9  authenticate the purported list of lost customers. F.R.E. 602, 901. While Mr. Hassapis

10 states that he is "familiar with VLS's employment records," he makes no such

11 showing of personal knowledge with respect to VLS's customer records.

12    Mr. Hassapis states that "*VLS* recently has been able to identify 1301" lost

13 customers. Hassapis Opp. Decl. ¶ 15 (emphasis added). Mr. Hassapis makes no

14 showing as to who identified the customers, when they were identified, how they were

15 identified, or whether they were identified in the course of ordinary business;

16 moreover, such a compilation contains inadmissible hearsay. F.R.E. 602, 901, 802,

17 803; *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183–84 (9th Cir. 2006) ("typed

18 summary of handwritten business records" "prepared for purposes of litigation" is

19 inadmissible).

20    The list is also contradicted by other records VLS produced in this litigation.

21 Emails produced by VLS prior to Mr. Pimentel's deposition on July 15, 2021 confirm

22 that he had spoken with numerous customers listed on Exhibit 4 and had confirmed

23 those customers were staying with VLS. Dkt. 143 ("Zaffos Decl.") ¶¶ 7–8; *id.* Ex. 30.

24 After that deposition and after the close of fact discovery, VLS produced thousands

25 of additional documents understood to be backups of records from Mr. Pimentel's

26 missing laptop. Those documents revealed additional customers on Exhibit 4 that Mr.

27 Pimentel had contacted and confirmed. Zaffos Decl. ¶ 5; *id.* Ex. 29.

28

1    Additionally, VLS seeks to produce new information for the very first time in

2   support of its Oppositions to Defendants' Motions for Summary Judgment. Prior to

3   ECU's Motion to Compel, "Vanguard refuse[d] to provide financial information

4   relating to post-termination business." Dkt. 112 at 6. ECU sought documents and

5   information relating to its damages theory, including "a list of customers for which

6   Vanguard claims some or all lost business[.]" *Id.* at 12. On July 30, 2021, the

7   Magistrate Judge granted ECU's motion to compel. Dkt. 124 at 2. The Magistrate

8   Judge ordered that "Plaintiff shall produce the documents requested by Wednesday,

9   August 11, 2021." *Id.* Only now, in support of its Opposition to Defendants' Motions

10  for Summary Judgment in December 2021, does VLS produce a purported list of

11  customers, after fact discovery has closed and months after the court-ordered deadline

12  to produce responsive documents to ECU's motion to compel. For this additional

13  reason, VLS's purported customer list should be excluded.

14  **PLAINTIFF'S SANCHOYERTO DECLARATION ¶¶ 3, 5, 10:**

15    VLS relies on Paragraphs 3 and 5 of the Sanchoyerto Declaration to argue that

16  NEG's Notice Letter stated that the Agency Agreement was "immediately

17  terminated." As shown above, Mr. Sanchoyerto's statement that the letter states that

18  NEG was "immediately terminating" the Agency Agreement does not appear in the

19  letter. Sanchoyerto Decl. ¶ 10; Dkt. 133-42 (NEG notice letter). NEG's Notice Letter

20  is the best evidence of its contents. F.R.E. 1002.

21    Morover, VLS relies on Paragraph 10 of the Sanchoyerto Declaration to argue

22  that NEG's Notice Letter stated that NEG was "refusing to accept any new business

23  for VLS." Sanchoyerto Decl. ¶ 10. This statement does not appear in the letter. Dkt.

24  133-42 (NEG notice letter). Instead, the letter says that NEG will "no longer accept

25  newly order Vanguard exports at its facility" but that it wanted to "facilitate the

26  orderly wind down of the parties' relationship and currently ordered exports in

27  transit." *Id.* NEG's Notice Letter is the best evidence of its contents. F.R.E. 1002.

28

## PLAINTIFF'S BRENNAN DECLARATION ¶ 10:

Vanguard relies on Paragraph 10 of the Brennan Declaration to argue that "NEG was then already up and running on ECU's network" on December 21, 2021. Like the objections to the Sanchoyerto, Donahue, and Hassapis declarations above, Mr. Brennan lacks personal knowledge and foundation to state whether NEG was up and running on ECU's network on that date. F.R.E. 602.

Dated: December 21, 2021    IRELL & MANELLA LLP
            Bruce A. Wessel


            By: /s/ Bruce A. Wessel
              Bruce A. Wessel

            Attorney for Defendant
            Econocaribe Consolidators, Inc.

            STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.

            By: /s/ Darrell Payne
              Darrell Payne

            *Pro Hac Vice* Counsel for Defendant Econocaribe Consolidators, Inc.

            FERNALD LAW GROUP APC ADAM P. ZAFFOS

            By: /s/ Adam P. Zaffos
              Adam P. Zaffos
            Attorneys for Defendant and Counterclaimant Groupage Services of New England, LLC

1

## **Attestation of Concurrence in Filing**

2      In accordance with Local Rule 5-4.3.4(a)(2)(i), I attest that concurrence in the

3  content and filing of this stipulation has been obtained from each of the other

4  signatories who are listed on the signature page.

5

6  Dated:  December 21, 2021                    Irell & Manella LLP

7

8
                                                By:_____/s/ Bruce A. Wessel_____
9
                                                    Bruce A. Wessel
10                                                   Attorneys for Defendant
                                                    Econocaribe Consolidators, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28