| | |
|---|---|
| STEARNS WEAVER MILLER WEISLLER ALHADEFF & SITTERSON P.A. <br> Darrell W. Payne, *pro hac vice* <br> Fla. Bar No. 773300 <br> dpayne@stearnsweaver.com <br> Veronica L. de Zayas, *pro hac vice* <br> Florida Bar No. 91284 <br> vdezayas@stearnsweaver.com <br> 150 West Flagler Street, Suite 2200 <br> Miami, FL 33130 <br> Telephone: (305) 789-3200 <br> Facsimile: (305) 789-2650 <br><br> IRELL & MANELLA LLP <br> Bruce A. Wessel, SBN 116734 <br> bwessel@irell.com <br> 1800 Avenue of the Stars, Suite 900 <br> Los Angeles, California 90067-4276 <br> Telephone: (310) 277-1010 <br> Facsimile: (310) 203-7199 <br><br> Attorneys for Defendant <br> Econocaribe Consolidators, Inc. | FERNALD LAW GROUP APC <br> Brandon C. Fernald (Bar No. 222429) <br> Adam P. Zaffos (Bar No. 217669) <br> Sasha N. Brower (Bar No. 2211198) <br> 15910 Ventura Blvd., Suite 1702 <br> Encino, California 91436 <br> Telephone: (323) 410-0320 <br> Facsimile: (323) 410-0330 <br> brandon.fernald@fernaldlawgroup.com <br> adam@fernaldlawgroup.com <br> sasha@fernaldlawgroup.com <br><br> Attorneys for Defendant and Counterclaimant <br> Groupage Services of New England, LLC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANGUARD LOGISTICS SERVICES (USA), INC., formerly known as NACA LOGISTICS (USA), INC., <br><br> Plaintiff, <br><br> vs. <br><br> GROUPAGE SERVICES OF NEW ENGLAND, LLC; ECONOCARIBE CONSOLIDATORS, INC., d/b/a ECU WORLDWIDE & ECU WORLDWIDE (USA); and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:18-cv-00517-DSF-GJS <br><br> DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO PRECLUDE ARGUMENT ABOUT POST-TERMINATION VIOLATION OF THE NON-COMPETE <br><br> PRETRIAL CONFERENCE: <br> October 3, 2022, 3:00 PM <br><br> TRIAL DATE: <br> October 18, 2022 <br><br> Judge: Hon. Dale S. Fischer <br> Courtroom: 7D |

**INTRODUCTION**

Defendants EconoCaribe Consolidators ("Ecu") and Groupage Services of New England, LLC ("NEG") submit this reply in support of their motion "for an order precluding Plaintiff [VLS] from arguing at trial that there was a violation of the non-compete provision in the Agency Agreement between VLS and NEG **after** the term of the Agency Agreement." Defendants' Notice of Motion and Motion in Limine to Preclude Argument about a Post-Termination Violation of the Non-Compete ("Motion") at 1 (Dkt. 166). Defendants' motion is based on VLS's admission that VLS's "breach of contract claim is not based upon . . . a breach of Section 2.02(a) of the Agency Agreement for conduct that occurred after the term of the Agreement . . . ." Motion at 2.[1] VLS's opposition to the Motion affirms that "VLS is not pursuing a claim for damages based on a theory of breach of the post-termination noncompete provisions of Sec. 2.02(a)." Opposition to Defendants' Motion in Limine to Preclude Argument about a Post-Termination Violation of the Non-Compete ("VLS Opp.") at 1 (Dkt. 172).

Because there are no VLS claims alleging or seeking damages for a post-termination breach of the non-compete, Defendants' motion should be granted. Because of this, it is also unnecessary for this Court to decide whether the post-termination non-compete is valid under California law. VLS's opposition does not explain why it is not asking for damages based on a violation of the post-termination non-compete if it believes it enforceable and its motives are not pertinent to this motion. What is important is that VLS admits that it has consistently told Defendants, and now tells this Court, that is not making that argument in this proceeding. Defendants have relied on this long-stranding narrowing of the case by VLS.

---

[1] Wessel Decl., Ex. B (VLS Response to ECU's Request for Admission No. 3). VLS also admits that the three claims against ECU do not allege a breach of the non-compete in Section 2.02(a) of the Agency Agreement. *Id.* (VLS Response to ECU's Request for Admission No. 4).

Despite VLS's concessions, VLS claims to oppose the Motion arguing that somehow "NEG's violation of the post-termination non-compete is relevant to . . . damages" (VLS Opp. at 1) and that because of legal opinions the Defendants received in 2016, VLS "seeks the opinion of this Court regarding the enforceability of the post-termination non-compete . . ." (VLS Opp. at 16).

VLS's arguments do not justify wasting many hours of everyone's time litigating what is clearly a non-issue in this proceeding.

## **THE DATE OF TERMINATION**

Because the parties agree that there is no claim for damages based on breach of the non-compete post-termination, a discussion of the date of termination is helpful.[2]

<u>December 21, 2017.</u> Defendants contend that the contract ended on December 21, 2017, the date that NEG sent a termination notice that was accepted by VLS when VLS cut NEG off from VLS's computer network.

In its summary judgment ruling, this Court found there are "triable issues of fact as to whether VLS . . . consented to the termination of the Agreement or waive[d its] rights to 90 days' notice by terminating NEG's access to its premises and systems [on December 21, 2017], as well as whether NEG was excused from giving 90 days' notice prior to termination." Dkt. 153 at 10. While Defendants have set December 21, 2017 as the termination date, VLS's position has not been clear.

<u>March 21, 2018?</u> VLS's opposition explains that "VLS's claim for damages is based on NEG's breach of the 90-day notice of termination provision . . ." VLS Opp. at 1. Thus, it appears that VLS may argue that the termination date is March 21, 2018, 90 days after the December 21, 2017 termination notice from NEG. That would be a logical positon for VLS to take, acknowledging the validity of the December 21, 2017 notice but arguing that the Agency Agreement continued for another 90 days.

---

[2] As to the pre-termination period, VLS has stipulated that "Vanguard is not seeking damages for any lost business occurring before December 21, 2017." Joint Stipulation of September 1, 2022 (Dkt. 165).

<u>Is VLS now arguing that the contract was never terminated?</u> In connection with the meet and confer process on this Motion, counsel discussed the date of termination. VLS counsel wrote an email to opposing counsel framing one question as follows: "Does VLS contend that the contract was never terminated because NEG never gave [proper] notice of termination?" Then VLS counsel answered his own question: "VLS is not making that contention but believes the Court could reach such a legal conclusion. From a factual standpoint, the parties clearly acted as if the business relationship between VLS and NEG ended (albeit improperly) once Michael Fencer transmitted his letter date 12-21-17 to VLS. However, from a legal standpoint, the Court could conclude the NEG's failure to give the required minimum 90 days written notice of termination establishes that the contract was never terminated." Wessel Supplemental Declaration ("Supp. Decl."), Ex. A (M. Eskigian 8/15/2022 email). In its opposition VLS tells this Court that the Agency Agreement "might remain in effect to this date," floating the idea that the Agency Agreement was not terminated. VLS Opp. at 15. The issue of whether the Agency Agreement is still in effect is addressed in Section II below.[3]

## ARGUMENT

VLS makes three arguments in its opposition, none of which are a basis for denying the motion. First, VLS argues that a violation of the post-termination non-compete rebuts a lack of foreseeability argument. VLS Opp. at 11-14. Second, VLS argues the contract "might" remain in effect to this day. *Id.* at 14-15. Third, VLS argues that burdening the Court with the enforceability of the post-termination issue is somehow appropriate on fairness grounds. *Id.* at 15-16.

---

[3] VLS's counsel is correct that as a factual matter "the parties clearly acted as if the business relationship between VLS and NEG ended" December 21, 2017. Importantly, the relationship ended because of decisions by VLS to accept the NEG termination notice as the end of the relationship rather than take steps to keep the relationship going for another 90 days.

- 3 -
REPLY TO OPPOSITION TO NON-COMPETE MIL

## I. WHETHER THE POST-TERMINATION NON-COMPETE IS ENFORCEABLE TODAY IS NOT RELEVANT TO DAMAGES.

VLS argues that "NEG's violation of the post-termination non-compete is relevant to rebut defendants' argument that it was not reasonably foreseeable that NEG's breach of the 90 day notice provision would cause VLS to suffer more than 90 days of damages." VLS Opp. at 1. Foreseeability, by definition, relates to what a contract party can foresee before the alleged breach. VLS can argue whatever it wants about the events that preceded December 21, 2017, including the existence of the non-compete and NEG and Ecu's legal opinions from 2016 that it was not enforceable under California law. But whether the post-termination non-compete is enforceable today, and whether there was breach of the non-compete in 2018, are not relevant issues to be decided at trial.

The California Supreme Court issued its *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020) decision three years after NEG's 2017 notice of termination. Certainly no one could have foreseen in 2016 that in 2019 the Ninth Circuit would certify certain questions on California non-compete law to the California Supreme Court and that in 2020 California's highest court would address those questions. Again, the enforceability of the post-termination non-compete is not relevant to the remaining issues in this proceeding nor is it clear whether VLS is asking this Court to determine what the law was in 2016, 2017, 2018, or today.[4]

---

[4] At all times before and after *Ixchel* employee non-competes are unlawful in California. An obvious problem with the VLS non-compete is that it purports to bind NEG's employees. California courts would likely hold that VLS cannot impose on NEG's employees a non-compete that VLS could not impose on its own employees. Thus every employee of NEG, including its owner, likely had a right to go work for Ecu. These are the types of issues this Court will need to address if it accepts VLS's invitation to opine on the validity of the VLS post-termination non-compete.

## II. THE ARGUMENT THAT THE CONTRACT IS STILL IN EFFECT IS MERITLESS

In the meet and confer before this Motion was filed, VLS said it was not contending that that the Agency Agreement was never terminated. In its opposition VLS states that the agreement "might remain in effect to this date." VLS Opp. at 11. VLS cannot bring itself to actually make the argument that the Agency Agreement is still in effect but it is also unwilling choose a date of termination.

The Agency Agreement is an at-will agreement and both NEG and VLS had a right to terminate. VLS appears to be leaving room to argue that the December 21, 2017 notice of termination somehow did not terminate the Agency Agreement. But the Agency Agreement at Section 3.03(c) provides that: "NEG may terminate this Agreement at any time upon ninety (90) days prior written notice to [VLS] (such notice effective on receipt) . . ." The December 21, 2017 "Notice of Breach and Termination of Agreement" states: "NEG hereby terminates the Agreement in all respects." Supp. Decl., Ex. B ("Based on Vanguard's material breach, NEG hereby terminates the Agreement in all respects, and will no longer accept newly ordered Vanguard exports at its facility.")[5]

VLS cannot seriously argue that the December 21, 2017 letter was not a valid notice of termination that was (to use the words of the Agency Agreement) "effective

---

[5] VLS has always taken the position that the warehouse (CFS) arrangement was outside of the Agency Agreement stating in multiple discovery responses "Vanguard admits that . . . CFS warehousing was not governed by the Agency Agreement." Thus VLS's position is that there was no 90-day notice provision governing termination of the warehouse arrangement and VLS acted in accordance with that view. VLS terminated the warehouse arrangement for imports on December 11, 2017 and NEG then terminated the warehouse arrangement for exports on December 21, 2017. There was nothing improper under VLS's view of the Agency Agreement about NEG's immediate termination of export warehouse arrangement in its December 21, 2017 letter. After NEG's termination of the warehouse arrangement on December 21, 2017, VLS consolidated its import and expert warehouse at BFT. Such a consolidated warehouse for imports and exports had been the longstanding practice.

- 5 -
REPLY TO OPPOSITION TO NON-COMPETE MIL

on receipt." When directly asked whether VLS was taking the position that the contract was never terminated, VLS said in writing "VLS is not making that contention but believes the Court could reach such a legal conclusion." Supp. Decl., Ex. A. It does not seem likely that this Court will *sua sponte* take a position not advanced by VLS that the Agency Agreement remains in effect today and, thereby, make application of the post-termination non-compete potentially relevant at some point in the future.

The cases that VLS cites about proper notice of termination do not involve at-will contracts. VLS Opp. at 15. These cases concerne contracts that by their terms, could only be terminated where there was: (1) a breach; and (2) a failure to cure after being given notice of the breach and a period of time to cure such a breach. The issue in these cases is usually the adequacy of the notice of breach (which is different from a notice of termination of an at-will contract).

*Mad River Lumber Sales Inc. v. Willburn,* 205 Cal. App. 321 (1962), cited by VLS, is illustrative. The contract gave Mad River the right to enter Willburn's property for ten years to remove timber at a set price. It contained the following termination clause: "Neither party hereto shall terminate this contract by reason of breach of any of the terms . . . hereof on the part of the other party . . . without first giving notice in writing to such other party of such breach, specifying the general nature thereof and requesting the same to be remedied . . . within fifteen (15) days thereafter." *Id.* at 322. Before Willburn sent a notice of breach, she put a chain across the road so that Mad River's employees could not enter the property. The court held that the notice of breach "was ineffectual to terminate the contract since Mrs. Willburn had prior thereto prevented access to the logging area." *Id.* at 323. The court explained: "Mad River should have a chance to correct its deficiencies." *Id.* at 325. *Mad River* thus concerns a notice of breach and an opportunity to cure in a contract that required a breach to terminate, not a notice of termination of an at-will contract.

The other cases cited by VLS are similarly distinguishable. There is no viable legal theory that the Agency Agreement is still in effect today and VLS should not be permitted to unnecessarily complicate this proceeding by arguing that the Agency Agreement was somehow terminated December 21, 2017 as a factual matter but also suggest that as a legal matter the Agency Agreement "might" never have been terminated.

## III. DETERMINING THE VALIDITY OF THE NON-COMPETE IS UNNECESSARY AND COMPLEX

VLS argues Defendants are "disingenuous" because Defendants hired law firms in 2016 to analyze the validity of the post-termination non-compete and that it is "unfair and improper" to deny VLS the right to "seek the opinion of this Court regarding the enforceability of the post-termination non-compete." VLS Opp. at 16.[6] But it is not this Court's job to analyze the 2016 opinions of counsel or hypothetical questions of law that are not presented in this case. This Court need not decide whether the post-termination non-compete was or is enforceable because VLS is not arguing that the provision was breached.

A reality check: VLS never sought enforcement of the non-compete by temporary restraining order or preliminary injunction when NEG sent the termination letter on December 21, 2017. VLS did file a lawsuit in January 2018, but (as it admits) did not allege a violation of the post-termination non-compete in the breach of contract claim or elsewhere in the complaint. VLS is not seeking (and never sought)

---

[6] Defendants had every right to seek legal advice on whether the non-compete was enforceable and seeking such advice shows proper conduct by Defendants leading up to the termination. By the same token, VLS had the right during this case to contest the legal conclusions reached by Defendants' counsel by, for example, seeking an injunction or seeking damages for violation of the post-termination non-compete. But VLS did not do that. VLS did the opposite. It repeatedly and explicitly stated that it was not making a claim based on a post-termination violation of the non-compete in this proceeding.

damages due to a violation of the non-compete. These intentional and considered VLS decisions mean that unalleged and theoretical post-termination violations of the non-compete are not part of this case.

VLS does have a declaratory relief claim seeking a declaration that "NEG <u>was prohibited</u> from directly or indirectly competing against plaintiff for one year following termination of the AGENCY AGREEMENT." Second Amended Complaint ¶ 60(f) (Dkt. 97)(emphasis added). VLS's intentional abdication of claims based on a breach of this provision of the Agency Agreement means that there is no reason for the Court to exercise its discretion to address this complex hypothetical or historical state law question by declaratory relief. See, e.g., *Argonaut Ins. Co. v. St. Francis Medical Center*, 17 F.4th 1276 (9th Cir. 2021)(affirming discretionary dismissal of declaratory relief claim); *Exxon Shipping Co. v. Airport Diner, Inc.*, 120 F.3d 166 (9th Cir. 1997)("It should go without saying that a declaratory judgment action must serve some purpose in resolving a dispute"); *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998)(review of trial court decisions on whether to adjudicate declaratory relief claims is deferential because trial courts have an "institutional advantage" (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).[7]

Dated: September 19, 2022      IRELL & MANELLA LLP
Bruce A. Wessel

By:/s/ Bruce A. Wessel
Bruce A. Wessel

STEARNS WEAVER MILLER

---

[7] Alternatively, the Court can sever and stay this issue for separate consideration after the damages trial if VLS still wants the issue adjudicated and can otherwise meet the requirements for such relief.

WEISSLER ALHADEFF & SITTERSON, P.A.

By: /s/ Darrell Payne
    Darrell Payne

Attorneys for Defendant
EconoCaribe Consolidators, Inc.

FERNALD LAW GROUP APC
ADAM P. ZAFFOS

By: /s/ Adam P. Zaffos
    Adam P. Zaffos

Attorneys for Defendant and Counterclaimant Groupage Services of New England, LLC

# **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276.

On September 19, 2022, I served the foregoing document described as DEFENDANT'S REPLY TO OPPOSITION TO MOTION TO PRECLUDE ARGUMENT ABOUT POST-TERMINATION VIOLATION OF THE NON-COMPETE on each interested party, by email, as follows:

| | | |
|---|---|---|
| David S Porter, Esq.<br>Law Offices of David S. Porter<br>17011 Beach Blvd., Suite 900,<br>Huntington Beach, CA 92647 | Telephone: (714) 444-5992<br>Fax: (714) 960-9229<br>Email:<br>dporter@dporterlaw.com | Attorneys for Plaintiff, Vanguard Logistics Services (USA), Inc. |
| Merak Eskigian<br>Mark Goshgarian<br>Goshgarian and Associates PLC<br>23901 Calabasas Road, Suite 2073<br>Calabasas, CA 91302-1542 | Telephone: (818) 519-9000<br>Fax: (818) 591-0810<br>Email:<br>meskigian@gmlawplc.net<br>Email:<br>mgoshgarian@gmlawplc.net | Attorneys for Plaintiff, Vanguard Logistics Services (USA), Inc. |
| Adam P. Zaffos, Esq.<br>Fernald Law Group APC<br>510 West 6th Street, Suite 700<br>Los Angeles, CA 90014 | Telephone: (323) 410-0327<br>Facsimile: (323) 410-0330<br>Email:<br>adam@fernaldlawgroup.com | Attorneys for Groupage Services of New England, LLC a Massachusetts limited liability company |

| Darrell Payne, Esq.<br>Veronica de Zayas, Esq.<br>Stearns Weaver Miller<br>Weissler Alhadeff &<br>Sitterson, P.A.<br>150 W. Flagler Street<br>Suite 2200<br>Miami, FL 33130 | Telephone: (305) 789-3200<br>Fax: 305-789-2650<br>Email:<br>dpayne@stearnsweaver.com<br>vdezayas@stearnsweaver.com | Attorneys for Econocaribe Consolidators, Inc. |
|---|---|---|
| Bruce Wessel, Esq.<br>Irell & Manella LLP<br>1800 Avenue of the Stars<br>Suite 900<br>Los Angeles, CA 90067 | Telephone: (310) 203-7045<br>Email: BWessel@irell.com | Attorneys for Econocaribe Consolidators, Inc. |

☐ (BY MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party, as stated on the attached service list. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Irell & Manella LLP, Los Angeles, California. I am readily familiar with Irell & Manella LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☒ (BY ELECTRONIC MAIL) I caused the foregoing document to be served electronically by electronically mailing a true and correct copy through Irell & Manella LLP's electronic mail system to the e-mail address(es), as stated on the attached service list, and the transmission was reported as complete and no error was reported.

Executed on <u>September 19, 2022</u>, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Bruce A. Wessel
   (Type or print name)                        (Signature)

**MAILING LIST**

| | | |
|---|---|---|
| David S Porter, Esq.<br>Law Offices of David S. Porter<br>17011 Beach Blvd., Suite 900,<br>Huntington Beach, CA 92647<br>(by e-mail only) | Telephone: (714) 444-5992<br>Fax: (714) 960-9229<br>Email:<br>dporter@dporterlaw.com | Attorneys for Plaintiff, Vanguard Logistics Services (USA), Inc. |
| Adam P. Zaffos, Esq.<br>Fernald Law Group APC<br>510 West 6th Street, Suite 700<br>Los Angeles, CA 90014 | Telephone: (323) 410-0327<br>Facsimile: (323) 410-0330<br>Email:<br>adam@fernaldlawgroup.com | Attorneys for Groupage Services of New England, LLC a Massachusetts limited liability company |
| Darrell Payne, Esq.<br>Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.<br>150 W. Flagler Street<br>Suite 2200<br>Miami, FL 33130 | Telephone: (305) 789-3200<br>Fax: 305-789-2650<br>Email:<br>dpayne@stearnsweaver.com | Attorneys for Econocaribe Consolidators, Inc. |
| Bruce Wessel, Esq.<br>Irell & Manella LLP<br>1800 Avenue of the Stars<br>Suite 900<br>Los Angeles, CA 90067 | Telephone: (310) 203-7045<br>Email: BWessel@irell.com | Attorneys for Econocaribe Consolidators, Inc. |